## WESTERN ASSUR. CO. v. SIMMONS et al.
### No. 13325.

United States Court of Appeals
Fifth Circuit.

May 23, 1951.

Lucian Touchstone, Dallas, Tex., for appellant.

Chandler Lloyd, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

The suit, brought against Jay Simmons, James W. White, and Jewel Webb by Western Assurance Company, hereafter called "Western", was for a judgment declaring that there was and is no policy of insurance in force and effect between plaintiff and the defendants, or any of them, covering a drilling rig belonging to Simmons and by him leased to White Webb Drilling Company.

The claim in substance was: that on Sunday, September 4, 1941, after 300 feet of hole had been made, there had been a serious blowout and cratering of the well; that the rig was in such imminent peril that Simmons had notified his lessee not to resume making hole until full insurance had been obtained; that the defendants, falsely concealing from Western's agent the perilous condition of the well and rig, and falsely representing that local insurance agents had already bound the rig, telephoned said agent at his home and induced him to send to Jay Simmons a telegraphic confirmation of the alleged binding; [1] That at six o'clock, within two hours of the sending of the telegram, and without any more work having been done on the well, there was a further blowout and cratering, causing serious and substantial damages to the rig; that the telegram confirming the so-called binding would not have been sent but for the defendant's fraud and

1. "J. Simmons
"5022 Seneca Drive Dal (DLY)
Confirm bindings drilling rig owned by J. Simmons leased to White Webb Drilling Co. located near Jefferson Texas $10,000 in regular perils including blow-out and cratering subject 100 percent co-insurance effective 4 PM Sept. 4th binder Western Assurance Company—
"Frank Rimmer & Co.
"By Eagleston
"$10,000 100 400 PM 4"

misrepresentation; and that no binding policy of insurance has, therefore, resulted.

Defendant Simmons appeared by motion to dismiss, setting up: that on Jan. 9, 1950, twenty-two days before the filing of the declaratory judgment suit, he had sued Western on the policy in the State Court of Marion County, where the loss occurred and most of the witnesses resided; that the state court suit involved the exact subject matter, contentions and issues; that that suit had been removed by Western to the United States District Court for the Eastern District of Texas; that it will determine all questions of fact and law and afford final relief as to all questions raised in this suit; and that the declaratory judgment suit ought, therefore, to be dismissed. The defendants White and Webb also moved to dismiss on the same grounds.

The motions overruled, the receiver of White Webb Drilling Company was allowed to intervene, answers were filed, and the case was fully tried to the court on the facts.

On May 19, the court filed an oral opinion, which, after purporting to set out his fact findings, including one that the declaratory judgment action had been filed after Simmons had filed his suit and Western had removed it to the Federal Court, concluded as follows:

"It follows, as a conclusion of law, that I do not declare that the Plaintiff did not have an insurance contract.

"That is as far as it is necessary for this Court to declare, because it is already in a suit brought there, and let that Court pass upon the damage, and any other points that may be necessary in the finding of the final judgment in the suit at law.

"I ask you to draw an order to be okayed by Mr. Touchstone as to form, saving such exception as he may wish."

On the same day he entered the judgment appealed from.[2]

Thereafter plaintiff, filing a motion for new trial challenging the purported findings as clearly erroneous and contesting the conclusions of law and the judgment as unfounded, the court, giving his reasons for doing so in an oral opinion and colloquy,[3] overruled the motion for new trial, and ap-

---

2. After reciting the appearance of all the parties, including the receiver of the White Webb Drilling Co., partnership and corporation, the judgment proceeded:

" * * * and all of the parties announced ready for trial and the Court proceeded to a trial of this cause.

"The Court proceeded to hear and consider the pleadings, the evidence and argument of counsel, and after such hearing and consideration, the Court made the Court's findings of fact and conclusions of law, and the Court is of the opinion that the plaintiff Western Assurance Company is not entitled to the relief for which it prayed, and that the plaintiff Western Assurance Company shall pay all costs of Court.

"It Is Therefore Ordered, Adjudged and Decreed And the Court Does Declare And Find As Follows:

" 'I do not declare that the plaintiff Western Assurance Company did not have an insurance contract.'

"It Is Further Ordered, Adjudged And Decreed that the plaintiff Western Assurance Company pay all costs of Court in this cause incurred.

"The Plaintiff Western Assurance Company then and there in open Court excepted to this ruling and judgment of the Court.

"Wm. H. Atwell,
"United States District Judge." ·

3. The Court: "I don't think any mistake has been made. I gave you a decree, declining to declare there was no contract. I didn't say there was not a contract, I declined to say that so that it could not be plead over there against you in the United States District Court where this case pends, and to which you removed, and that is all this suit is to decide.

"I do not agree with you as to the facts, and I found the facts in accordance with what I found them to be. And, again, Mr. Simmons never did have any policy of insurance, nor did Simmons have anything to do with any alleged misrepresentation. Simmons was the lessor. So that I found wholly different about the facts, and the information that was given, and the blowout that happened, and its having stopped, and the lessor of the rig said, 'We will not go ahead until I am sure this rig is covered.'

"So I find against your motion, Mr. Touchstone. You have a right to try it

pellant is here insisting[4] that the judgment was erroneous and must be reversed with directions to render judgment for appellant.

Appellees, on their part, insisting that the judgment was right, urge its affirmance.

While the matter is not entirely free from doubt, a careful examination of the judgment in the light of the reasons given by the judge in denying the motion for new trial, convinces us that the judgment was not intended to be, and it is not, a final judgment on the merits of plaintiff's claim. It is rather a judgment in effect declining in the exercise of discretion, and because of the prior filing of the Simmons suit in the state court and its removal to the federal court, to entertain the declaratory judgment action.

As the matter stands before us, then, the only question for our consideration is whether the district judge acted within the limits of his discretion in declining to enter a final judgment in the suit which would operate as a bar and, so declining, remitting the parties to the suit filed first in the state court for the determinaion of the issues.

We are in no doubt that he did so act. In Illinois Central Railroad Co. v. Bullock, 5 Cir., 181 F.2d 851, this court dealt with a quite similar situation. There, in spite of the urgent insistence that this court was committed by its opinion in Carpenter v. Edmundson, 5 Cir., 92 F.2d 895, to a contrary view, and, without pointing out why this was not so,[5] or citing the numerous au-

---

down there, and fight it out down there in the other Court.

"Mr. Touchstone: As I interpreted your holding, it was to the effect that there was a policy of insurance in force and effect.

"The Court: No sir, that is not in the judgment, I declined to hold that. I declined to hold that there was, or, was not.

"Mr. Touchstone: I had hoped that that was your findings, but I rather put the other interpretation on it.

"The Court: Well, of course, I cannot help that. So that it is an open case down there, you gentlemen can fight it out to suit yourselves. I said, 'I do not declare that the Western Assurance Company did not have an insurance contract.' You see, I do not declare that, that is an open question.

"Mr. Touchstone: Of course, that gives us a lot of satisfaction.

"The Court: That was the understanding, they all understood that. That cannot be pleaded down there to hurt you, nor have you anything here you plead that will hurt them. You took it down there, and I don't think the facts justify any different holding than that which I have made.

"You gentlemen can prepare the order on that.

"Mr. Lloyd: I will prepare an order, Your Honor.

"The Court: All right."

4. "It is earnestly submitted that a gross fraud and injustice has been perpetrated against appellant, that it was entitled to a judicial declaration that none of appel-

lees had any rights under the purported telegraphic binder of insurance, and for other relief, and that the court abused its discretion in refusing to so declare, and in entering the double negative judgment which it did.

"Wherefore, appellant respectfully prays that the judgment of the trial court be reversed and the cause remanded with instructions to render judgment for appellant, and for such other and further relief to which appellant may be entitled."

5. The reason was that that case did not involve the question of whether, in the exercise of its rightful discretion, the federal court could decline to proceed with a declaratory judgment suit. It involved the question of the right of the federal court to enjoin a suit in the state court. This right was denied by us. It involved also the erroneous conclusion of the district judge that, because of the pendency of the state court suit, he must refrain from exercising the jurisdiction of the federal court. We held that this was not a correct view, and, further, that since, under the facts and circumstances, the federal court proceeding was a different one from that in the state court, it was proper for both suits to proceed at the same time.

That decision was correct, and, except in a few cases where its holding was not clearly understood, it has been universally followed and cited with approval.

This court in many cases since Carpenter's, Cf. Hardware Mutual Cas. Co. v. Schantz, 5 Cir., 178 F.2d 779, 780, has given full effect to the view we express

thorities[6] which supported the action we took, we flatly held that the district judge, in declining to entertain the declaratory judgment suit did not abuse his discretion, and that his judgment, reformed so as to be without prejudice, should be affirmed.

Because, however, of the confusion caused by the form of the judgment below, when taken alone and apart from what was said by the district judge in denying the motion for new trial, we cannot safely order its affirmance. We must, as we did in the Illinois case, supra, order the judgment reformed by adding to it the language in substance employed by the court in denying the motion for new trial "without prejudice to the right of the parties to fully try out in the first filed suit all the controversies and issues between them."

As so reformed, the judgment is

Affirmed.

here, that entertaining or refusing to entertain a declaratory judgment suit involves the exercise of sound discretion, and that normally, "in the exercise of that discretion Federal Courts should not usurp the jurisdiction of the State Courts in instances where State Courts have first obtained jurisdiction of the parties and of the subject matter."

6. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; McLain v. Lance, 5 Cir., 146 F.2d 341; Hardware Cas. Co. v. Schantz, 5 Cir., 178 F.2d 779; U. S. Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288, 294; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Indemnity Ins. Co. of North America v. Schriefer, 4 Cir., 142 F.2d 851; Cf. 42 A.L.R. Note (e) p. 40.